IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GHASSAN AYESH,

      Plaintiff,

v.

FAIR ISAAC CORPORATION, et al.,

      Defendants.

      /

No. C 04-2980 SI

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

On June 24, 2005, the Court heard argument on defendants' motion for summary judgment. Having carefully considered the arguments of counsel and the papers submitted, the Court hereby GRANTS defendants' motion.

**BACKGROUND**

Plaintiff Ghassan Ayesh is an Arabic Muslim from Palestine. He was hired by defendant Fair Isaac Corporation (Fair Isaac) as a software engineer on September 1, 2000. Fair Isaac is a producer of analytic software for businesses. During the application process with Fair Isaac, plaintiff interviewed with defendant Andrew Story and with Lorraine Webster. While an employee at Fair Isaac, Story was plaintiff's supervisor and conducted quarterly performance evaluations of plaintiff's work. In the second quarter of 2002 and the first quarter of 2003, Story gave plaintiff a rating of "IN" (improvement needed).

On April 22, 2003, Fair Isaac informed plaintiff that he was terminated effective May 6, 2003. Plaintiff timely filed charges of discrimination with the EEOC, which provided plaintiff with a notice of right to sue on April 26, 2004. Thereafter, plaintiff filed a complaint in this Court against Fair Isaac and Andrew Story, alleging claims of employment discrimination, negligent infliction of emotional distress, and intentional infliction

of emotional distress. Defendants now bring a motion for summary judgment against all of plaintiff's claims.

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only point out to the Court that there is an absence of evidence to support the non-moving party's case. See id. at 325.

The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. Id. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when she] is ruling on a motion for summary judgment." Id.

## DISCUSSION

Plaintiff's opposition does not oppose defendant's motion with respect to the Fourth Cause of Action (negligent infliction of emotional distress). Therefore, the Court GRANTS summary judgment in favor of defendants on this claim. Plaintiff opposes summary judgment for his remaining claims; therefore, the Court will discuss these claims below.

**1.    First Cause of Action (Employment Discrimination)**

Plaintiff asserts a violation of Title VII and the Fair Employment and Housing Act (FEHA) against defendants for employment discrimination based on race, national origin and religious discrimination. The burden-shifting method of proof set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), governs plaintiff's discrimination claim.[1] Plaintiff must first establish a prima facie case of discrimination. If plaintiff establishes a prima facie case, then the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for its adverse actions. If the employer does so, then the plaintiff must demonstrate that the employer's proffered reason for the adverse action is in reality a pretext for discrimination.

When the termination results from a general reduction in the workforce, plaintiff must show through direct, circumstantial, or statistical evidence that the discharge occurred under circumstances giving rise to an inference of discrimination. Coleman v. Quaker Oats Co., 222 F.3d 1271, 1281 (9th Cir. 2000).

Plaintiff presents only his own two-page declaration in support of his opposition.[2] In that declaration, he claims that his performance reviews were false, asserting that he never had problems with "process or planning" or caused any delays in the release of software. Ayesh Decl. at ¶ 4-5. Plaintiff cites his deposition testimony stating that he was criticized for his English language proficiency on several occasions. Sommer Decl., Ex. A at 84. Plaintiff also testified that he was criticized for his English proficiency in all of his performance reviews. Id.

The Court finds that this is not sufficient evidence for a prima facie case of discrimination. An employee's "subjective personal judgments" of his competence alone do not raise a genuine question of material fact at summary judgment. Bradley v. Harcourt, Brace and Co., 104 F.3d 267, 270 (9th Cir. 1996). Essentially, plaintiff argues that the performance reviews, which were the basis for his termination, were false based on his subjective opinion. Plaintiff presents no evidence that Story or Lorraine Webster, Story's immediate supervisor, made any hostile comments about plaintiff's race, ethnicity, or religion. In fact, plaintiff

---

[1] California courts use this same burden-shifting approach in evaluating FEHA claims. See Bradley v. Harcourt, Brace and Co., 104 F.3d 267, 272 (9th Cir. 1996). Thus, the analysis applies to both plaintiff's Title VII and FEHA claims.

[2] Defendants lodge numerous objections to the Ayesh Declaration. The Court finds that summary judgment in defendants' favor is appropriate even if the Ayesh Declaration is taken into consideration; therefore, the Court OVERRULES the objections.

3

only claims that Webster's and Story's "body language" and the atmosphere surrounding their conversations "makes [him] confidently say [he] was mistreated and discriminated against." Sommer Decl., Ex. A at 17.

Conversely, defendants present a great deal of evidence demonstrating that plaintiff was terminated during layoffs in April 2003 based on poor performance. The layoffs took place as a result of Fair Isaac's merger with HNC Software and as an effort to reduce expenses. Deal Decl. at ¶ 2. Employees were terminated based on overlapping job responsibilities or for poor performance. Id. at ¶ 3. Richard Deal, Vice President of Human Resources, was responsible for overseeing the layoffs. Id. Deal consulted with Michael Chiappetta, the senior manager of the Analytic Tools Unit, about eliminating positions. Id. at ¶ 4. Chiappetta recommended that plaintiff, an employee in the Analytic Tools Unit, be terminated because plaintiff received an "IN" rating in two quarters preceding the layoffs. Id. at ¶ 3. Chiappetta and Deal did not consult with any lower-level managers, including Story or Webster, in making the termination decision. Additionally, Chiappetta and Deal had never met plaintiff, nor did they know his race, nationality or religion. Chiappetta Decl. at ¶ 5-6; Deal Decl. at ¶ 8. Therefore, the evidence demonstrates that the individuals responsible for plaintiff's termination did not make the decision to terminate based on his protected status. Nor did Deal or Chiappetta have any reason to believe that plaintiff's negative reviews were the result of any discrimination.

Defendants produce several performance reviews, in which plaintiff was criticized for numerous deficiencies in performance such as communications, organization, and planning. Story Decl., Exs. C-F. Plaintiff was also criticized for failing to attend all meetings and arrive on time. See Story Decl., Ex. C. The performance reviews do not comment on his English proficiency. Instead, the reviews state that plaintiff had communication problems because "on more than one occasion [plaintiff] received an assignment to cover a certain set of topics, and [he] left out key topics from the effort." Story Decl., Ex. D. Additionally, plaintiff also tended "to spend a lot of time on certain tasks without confirming first that the work is required" and Story was required to inform plaintiff that "the team is depending on him to listen to and act on their feedback." Id. The performance reviews also go into great detail describing plaintiff's difficulties and possible means of improvement. See e.g., Story Decl., Ex. E-F.

Plaintiff presents no evidence that Story and Webster intended for his "IN" ratings on two occasions to result in termination of his employment. Defendants present evidence that Story and Webster were surprised

4

to hear that plaintiff had been terminated and had no involvement in that decision. See Sommer Decl., Ex. C at 19-27; Sommer Decl., Ex. E at 12-15.

The Court finds that plaintiff has failed to present a prima facie case of discrimination, because his subjective opinion of his performance is insufficient. However, even if plaintiff demonstrated a prima facie case, summary judgment is appropriate. Defendants have presented substantial evidence that plaintiff's termination was based on poor performance, a legitimate non-discriminatory reason, and plaintiff has not presented any evidence to demonstrate that the reason is a mere pretext for discrimination. Therefore, the Court GRANTS defendants' motion for summary judgment on the First Cause of Action.

**2.       Second Cause of Action (Discrimination in Hiring in Violation of Public Policy)**

Plaintiff also asserts a claim under the California Constitution, Article I, Section 8 for "discrimination in hiring in violation of public policy." It is unclear what claim plaintiff makes under this cause of action; however, a failure to hire does not create a cause of action under Article I, Section 8. Himaka v. Buddhist Churches of America, 919 F.Supp. 332, 335 (N.D. Cal. 1995).

It appears that plaintiff's claim relates to his termination as a violation of public policy. Plaintiff asserts that the claim is supported by his testimony that his negative performance reviews were false. However, as discussed above, plaintiff presents no evidence that the termination determination was motivated by plaintiff's race, ethnicity or religion. Therefore, the Court GRANTS defendants' motion for summary judgment for this claim.

**3.       Third Cause of Action (42 U.S.C. § 1981)**

Plaintiff asserts a claim under 42 U.S.C. § 1981 for racial discrimination. Section 1981 provides a federal remedy against race-based employment discrimination in the private and public sectors. Magna v. Com. of the Northern Mariana Islands, 107 F.3d 1436, 1446 (9th Cir. 1997); Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 459 (1975). A plaintiff may establish a prima facie case of intentional discrimination in employment under § 1981 upon proof of facts that would establish a prima facie case under Title VII. Gay v. Waiters' and Dairy Lunchmen's Union, 694 F.2d 531, 539 (9th Cir. 1982). As discussed

above, plaintiff has failed to present a prima facie case under Title VII and plaintiff presents no additional arguments for its § 1981 cause of action. Therefore, the Court GRANTS defendants' motion for summary judgment on plaintiff's Third Cause of Action.

**4.     Fifth Cause of Action (Intentional Infliction of Emotional Distress)**

Plaintiff argues that defendants are liable for intentional infliction of emotional distress. To recover for intentional infliction of emotional distress a plaintiff must show: "1) outrageous conduct by the defendant, 2) intention to cause or reckless disregard of the probability of causing emotional distress, 3) severe emotional suffering and 4) actual and proximate causation of the emotional distress." Agarwal v. Johnson, 25 Cal.3d 932, 946 (1979). Outrageous conduct is that which exceeds "all bounds usually tolerated by a decent society, [and is] of a nature which is especially calculated to cause, and does cause, mental distress." Id.

Plaintiff provides no discussion of this issue in his opposition. Certainly, the decision to terminate plaintiff based on poor performance evaluations was not beyond "all bounds usually tolerated by a decent society." Plaintiff presents no evidence that defendants made any derogatory comments to him based on his race, religion or ethnicity. As discussed above, defendants have presented evidence that Story was not aware that his performance reviews of plaintiff would lead to his termination. Additionally, "[a] simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged. If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination." Janken v. GM Hughes Electronics, 46 Cal.App.4th 55, 80 (1996). Therefore, the Court GRANTS defendants motion with respect to plaintiff's Fifth Cause of Action.

**5.     Plaintiff's request for extension of time**

Plaintiff requests an extension of time to submit further proof in opposition to defendants' motion. Plaintiff claims that he needs additional time to review documents produced by defendants relating to projects plaintiff worked on, asserting that these documents will demonstrate that plaintiff performed exemplary work and was wrongfully blamed for others' mistakes. Defendants produced these documents on April 26, 2005.

United States District Court
For the Northern District of California

1  Plaintiff also asserts that he "intends to file a motion to compel production" of the electronic versions
2  of these records. Opp'n at 3. Plaintiff requested electronic versions of the records on May 9, 2005. Supp.
3  Sommer Decl., Ex. A. On May 19, 2005, defendants responded that they had concerns about providing
4  electronic copies of proprietary information and requested that plaintiff identify specifically which documents
5  he sought. Id., Ex. B. Plaintiff never responded. Therefore, defendants have not refused to produce electronic
6  records.
7  Non-expert discovery has closed and the date to bring a motion to compel under Civil L.R. 26-2 has
8  passed. This case has been pending since July, 2004 and, since the Case Management Conference in
9  November, 2004, has been set for trial in August, 2005. A further Case Management Conference was held
10 in April, 2005; no continuances were requested by either side. The discovery mentioned by plaintiff in his
11 papers should have been completed by now.
12 Plaintiff also requests an extension because plaintiff's attorney, Thomas Brill, no longer practices at
13 Sayre & Chavez, as of May 30, 2005. However, Brill signed the plaintiff's opposition brief and plaintiff does
14 not explain the impact Brill's departure had on the opposition brief. Therefore, the Court denies plaintiff's
15 request.

19 ///
20 ///

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' motion for summary judgment. [Docket ## 23, 38.]

**IT IS SO ORDERED.**

Dated: June 27, 2005

    S/Susan Illston
SUSAN ILLSTON
United States District Judge